LOWRY, Appellant, vs. THE MILWAUKEE NATIONAL BANK OF WISCONSIN, Respondent.

*April 5—April 22, 1902.*

*Promissory notes: Renewal: Payment: Banks and banking.*

One who was indebted to a bank both upon a note and upon an overdraft gave, as collateral security for such debt or to secure future advances, another note due in five years, secured by mortgage for an amount less than the overdraft. This note was not at the time carried to his credit in the account. Afterwards he gave another note, which was carried to his credit, reducing the overdraft. As these notes, other than the mortgage note, became due, they were renewed from time to time, the debtor giving new notes, which would be placed to his credit in the account, and giving checks for the amounts of the old notes, which the bank would thereupon stamp "Paid" and surrender to him. He also made deposits and drew checks, and balances were struck in his book from time to time. His account continued to be overdrawn, and as the overdraft increased he gave other notes, which were renewed and carried into the account in the same way. None of the renewal notes was ever accepted as payment of the original debt. *Held*, that the collateral note and mortgage had not been paid.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Affirmed.*

On and prior to June 15, 1887, Israel H. Lowry was engaged in the commission business on the Board of Trade of Milwaukee, doing business as I. H. Lowry & Co. In the course of his business he became indebted to the defendant, so that on the date last mentioned he owed the bank on a note of $10,000, and had overdrawn his account to the amount of $22,632.27. The bank was pressing him for payment. On that date he executed, with plaintiff, his wife, and delivered to C. T. Bradley, president of the defendant, and for its benefit, a mortgage upon their homestead in the city of Milwaukee to secure a note of I. H. Lowry & Co. to said Bradley for the sum of $12,000, due in five years with seven per cent.

interest, payable semi-annually. The note and mortgage were
assigned to the bank on July 9, 1888. No money was paid
to the mortgagors. The note and mortgage seems to have been
given, as the court found, as security for the indebtedness of
I. H. Lowry & Co. to the bank. Lowry continued doing
business with the bank until the year 1894, and his indebted-
ness increased from year to year until at that date, upon a
settlement, it was found that he owed the bank $128,594.94.
In May, 1894, the bank threatened foreclosure of the mort-
gage. On May 14th Lowry and plaintiff executed a deed of
the mortgaged premises to their son-in-law, W. W. Wight,
and on June 26th the latter executed a deed of the same to
the bank. At the same time the plaintiff executed and de-
livered to the bank a note for $12,000, due in three years, and
the bank gave her a contract to convey the premises to her
upon payment of said sum and compliance with the conditions
of the contract. On May 1, 1897, plaintiff took a lease of the
premises for a year, with an option to purchase the premises
at the sum of $12,000 during said term.

In May, 1898, the plaintiff commenced this action, setting
out the transactions before mentioned with reference to the
property in question, and claiming that the mortgage first
mentioned had been fully paid before she executed the deed
to Wight, and that she had no knowledge of the fact until the
year 1898. She asked to have the deed to Wight and his
deed to the bank set aside, and that the mortgage be declared
paid, and that she be allowed to hold the property clear of any
claim of defendant. The bank answered, denying payment of
the mortgage and alleging a settlement with Lowry.

The case was referred to a referee, who made findings to
the effect that the mortgage had been fully paid. On motion
of defendant the referee's findings and conclusions were set
aside. The matter was then taken up by the court, and new
findings were made. These findings cover the formal facts
before stated, and, in addition, the facts and circumstances

relative to the manner in which Lowry and the bank conducted their business, and upon which plaintiff relies as showing a payment of the mortgage. Finding 7 was as follows:

"Seventh. The mode of doing business between the said Israel H. Lowry and the said defendant bank consisted of the said I. H. Lowry & Co. depositing in said defendant's bank moneys, checks, and drafts which were credited in his account, and of his drawing checks against his said account in said bank, and being charged for such checks when paid in said account on the books of said bank, and periodically in his bank book; and when the said note which was outstanding on June 15, 1887, became due, and at the time all other notes thereafter given by said I. H. Lowry & Co., representing his indebtedness to the bank, became due, the same were renewed by said bank, and the renewal notes were again renewed, down to the time of the closing of his said account. The mode of doing business and the methods of renewing such notes were substantially as follows: The said Lowry would arrange for the renewal of the notes when they severally matured, and would thereupon give a new note for the amount of the old one maturing at such date, which new note would be placed to the credit of his account, and he would thereupon give a check for the amount of the old note, or in some instances a check for the interest only on such old note, which check would be charged to his account, and the old note would thereupon be stamped 'Paid' by the bank and surrendered to him. By this transaction the indebtedness of I. H. Lowry & Co. to said bank remained the same, but the form of the security was changed by the surrender of the old note and the receipt of the new note given as renewal thereof."

The court further found that the indebtedness of Lowry, existing at the time the mortgage was given, was not paid, and that when old notes were surrendered and new ones taken there was no agreement that such new or renewal notes should be accepted in satisfaction of the debt evidenced thereby, but that such debt remained the same as before. He also found that the deposits in the account of I. H. Lowry & Co. from day to day were applied by the defendant, with the consent of Lowry, to the payment of checks and drafts on said account

from day to day. Findings were also made to the effect that no misrepresentations were made to plaintiff by the bank officials, and that a settlement and compromise was made between plaintiff and defendant on May 14, 1894, wherein defendant agreed to surrender and cancel, and did surrender and cancel, the notes and obligations it had against I. H. Lowry, upon the execution of the deed of the premises mentioned. The court's conclusion was that the mortgage had not been paid, and that judgment should go for defendant.

This appeal is from the judgment entered as directed.

For the appellant there were briefs by *Timlin, Glicksman & Conway,* and oral argument by *W. H. Timlin.*

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. H. Noyes.*

BARDEEN, J. Plaintiff's contention that the mortgage upon her homestead had been paid is based largely upon the manner in which the defendant and her husband conducted their business. The potential facts necessary to be considered may be stated as follows:

At the date the mortgage was given, Lowry owed the bank $10,000 on a note due July 25th thereafter. He had also overdrawn his account to the amount of $22,632.27. The account remained the same until June 24th, except that from day to day Lowry made deposits and drew checks thereon, so that the ultimate balance on that day was about $100 less than it was on the day the mortgage was given. On June 24th, Lowry gave the bank a note for $15,000, which was carried to his credit and reduced his overdraft. Thereafter, and until July 25th following, Lowry made deposits almost daily and drew checks on his account, and the difference between the amounts deposited and the checks drawn was deducted from or added to the balance of his overdraft. On July 25th the $10,000 note in existence at the time the mortgage was given became due. Lowry then gave a new note for $10,355.83,

which included interest for six months. He also drew his check for the amount of the old note, and both the checks and the new note were carried into his account. As these notes became due thereafter, the same transaction occurred, except that in one or two instances, instead of giving his new note for the principal and interest, he would give a note for the principal and his check for the amount of the interest. This plan continued from year to year until 1893. In the meantime Lowry continued making deposits and giving checks, and from time to time his bank book would be written up and balanced and his vouchers returned. Other notes were given as his overdraft increased, and were taken up, renewed, and carried into his account in about the same way.

The theory of plaintiff is that, as deposits were made from time to time by Lowry, the same should be applied on the oldest items of the account, and thus the overdraft existing at the time the mortgage was given would be completely wiped out and paid within a few months thereafter. The $10,000 note would also become fully paid in the same way after it had been carried into the account.

We have followed with considerable interest the elaborate argument of plaintiff's counsel, and have consulted the various authorities cited to support his contention. His whole argument is based upon the assumption that the transactions mentioned, and the system of bookkeeping used, indicate that the debt existing at the time the mortgage was given has been discharged, and that as the mortgage was given to secure a present indebtedness, which is no more, the mortgage must be deemed as paid. As we view the situation, it becomes unnecessary to decide whether the mortgage was given as collateral to the debt then due to the bank from Lowry, or as security for future advances. The plaintiff must remember that she is in a court of equity seeking equitable relief; that equity goes beneath the surface of things, and grasps at and avails itself of the substantial facts disclosed. In line with

that principle it becomes our duty to look at and consider the substance of the transactions mentioned, rather than their mere form; to put ourselves, as near as may be, in the attitude of the parties to them, and ascertain the purpose and intention of their various acts.

The evidence is not in dispute. It offers some circumstances explanatory of the transactions, and gives some aid in interpreting the situation. We have then a creditor and a debtor. One part of the debt is evidenced by a note, and the other by an open account. At a later date the debtor transforms a portion of the account into a note. These notes become due from time to time. The debtor has no money to pay them. His bank account still remains overdrawn. He makes a new note including interest for the time of the extended credit. He gives a check on his overdrawn account to cover the amount of the note. Thus his term of credit is extended year after year. From the circumstance that these notes were carried into the debtor's general account, and balances were struck in his book from time to time, the plaintiff insists that the original indebtedness has been paid. There are certainly some cases cited supporting this view. But this court stands committed to a somewhat different rule. In the first place, the acceptance by the bank of a note from Lowry in place of the old one was not a payment of the old one unless expressly so agreed. The long line of cases cited in *Willow River L. Co. v. Luger F. Co.* 102 Wis. 636, 78 N. W. 762, settle that as a proposition of law prevailing in this state. The fact that, when a new note was given, the old one was delivered to Lowry, stamped "Paid," was explained as being in accordance with the practice of the bank. It was not intended as a payment and discharge of the debt. As the bank officials say, it was intended merely as a renewal of the old note. This purpose seems so much in harmony with good business management, and is so evident from all the circumstances in the case, that it cannot be overcome except by evidence clearly indicat-

ing a contrary intent. This evidence was not produced. Certainly, the mere circumstances of carrying the new note into the overdrawn account, and the giving of a check by Lowry for the amount of the old one, are not sufficient. The balancing of the account and the surrender of the old note and vouchers was a proceeding according to the custom of the bank. Looking at the entire transaction, and dealing with the *substance* of the affair, it amounts to nothing more than a "gift of time" to Lowry. There was no testimony of any understanding or agreement whatever that any of the several notes should be received, or were received, except as renewal notes. The evidence seems conclusive that the bank never accepted any one of the renewed notes in payment or satisfaction of the original debt. It was never in fact paid, but was carried along from time to time until about the time of the final settlement.

The case of *First Nat. Bank v. Case,* 63 Wis. 504, 22 N. W. 833, is closely parallel in all its facts. The case and briefs show that the practice of the bank was very similar to the case at bar. In the discussion of the case, Chief Justice COLE says:

"Of course, the *onus* was upon the defendant to show by direct and positive proof that the plaintiff had agreed to receive some one of the renewed notes as a payment and discharge of the original loan. The surrender of the old note upon a new one being given does not raise any presumption of the extinguishment of the debt, but an agreement must be shown that it should have that effect. The defense of payment is attempted to be established here by facts and circumstances not conclusive in their probative force, even when not met by countervailing evidence. But in the light of other explanatory testimony they have but little effect to prove the defense. They certainly fall far short of proving an agreement or understanding on the part of the bank that any renewed note should pay the debt."

Applying this language to the facts in this case leaves nothing more to be said. It touches it upon all its four corners.

The original debt not having been discharged, the mortgage was a binding obligation. We approve the findings of the trial court, and must sustain the judgment.

By the Court.—The judgment is affirmed.