GEORGE MINOT & another *vs.* THOMAS THACHER & another
THE SAME *vs.* THE MANUFACTURERS INSURANCE COMPANY
THE SAME *vs.* CHARLES W. CARTWRIGHT.

The statute of limitations does not run against a claim upon an insolvent debtor, after the publication of the messenger's notice of the issuing of a warrant against the debtor, under *St.* 1838, *c.* 163. A claim, not barred by that statute when such publication is made, may be proved at a meeting of the creditors held after it would otherwise have been barred.

Where an insolvent debtor, whose property had been assigned, and who had been discharged under *St.* 1838, *c.* 163, before the passing of the United States bankrupt act, petitioned to be declared bankrupt under that act, and was so declared, and received a certificate of discharge; it was *held*, that these proceedings under the bankrupt act did not take away the right of his creditors to prove their claims against his estate afterwards, under said *St.* of 1838.

Under *St.* 1838, *c.* 163, claims against an insolvent debtor are not required to be proved at one of the first three or four meetings of the creditors, but may be proved at any regular meeting of them.

THESE were appeals, taken from the decision of Joseph Willard, Esq., a master in chancery, by the assignees, under *St.* 1838, *c.* 163, of Robert Rogerson, an insolvent debtor. The master allowed the respective appellees to prove certain claims, hereinafter stated, as debts against said Rogerson.

The following statement was agreed upon by the parties: " The claim of Thomas Thacher and another arose under a draft of said Rogerson for $3986·05, dated at Boston March 6th. 1837, and payable in six months from the 27th of March 1837, and also under a note of said Rogerson, for $2291·85, dated at Boston March 20th 1837, and payable on demand. The claim of said Manufacturers Insurance Company was upon a note of said Rogerson for $1500, dated at Boston July 8th 1833, and payable in six months from date. The claim of said Cartwright was on a note of said Rogerson for $20,000, dated at Boston June 12th 1838, and payable on demand.

" All said claims are just and due, and are proveable against the estate of said Rogerson, unless the facts hereinafter stated, which are admissible in evidence, constitute a sufficient bar to or discharge thereof.

" Said Insurance Company has, and always has had, its usual place of business in Boston, and is incorporated under the laws

of the Commonwealth. Said Rogerson and said other appellees have, ever since the year 1830, resided in and been citizens of this Commonwealth.

" The original warrant to take possession of said Rogerson's property under *St.* 1838, *c.* 163, was issued by said master on the 5th of December 1839, and due notice thereof was given The first meeting of the creditors was held December 18th 1839 ; the second was held December 30th 1839 ; the third was held June 16th 1840 ; the fourth was held June 3d 1841 ; and the fifth was held December 12th 1842, and was continued by adjournments to February 3d 1843. Said Rogerson was duly discharged under said statute, at said second meeting. On the 3d of February 1842, he petitioned the district court of the United States for the district of Massachusetts, to be declared bankrupt under the bankrupt act of the United States, passed August 19th 1841 ; and in pursuance thereof was decreed bankrupt on the 22d of March 1842, and was duly discharged by said court, under said bankrupt law, July 30th 1842.

" The claims of said appellees were not presented to said master for proof until said fifth meeting ; but said Insurance Company, and said Cartwright, surrendered to said assignees (the appellants) certain collateral security held by them, and filed their said notes with the clerk in the matter of said Rogerson's insolvency, after said fourth meeting, and before said Rogerson petitioned as above to be declared bankrupt, to wit, on the 19th of October 1841, declaring, at the same time, their intention of proving the same. At the time when the foregoing claims were presented for proof, there were assets in the hands of the assignees, (the appellants,) but no dividend had been declared."

*Brigham,* for the appellants. The note of the Insurance Company was barred by the statute of limitations on the 11th of January 1840, before any steps were taken by the company under the proceedings in insolvency, though after the date of the warrant. Eden on Bankruptcy, (2d ed.) 121. *Ex parte Dewdney,* 15 Ves. 479 ; 19 Ves. 468 ; 2 Rose, 245.

All the claims of the appellees were discharged by the proceedings under the United States bankrupt law, before they

30

were presented for proof under the state insolvent law.   Leav-ing the claims with the clerk was no step towards proof, which can be made only at a meeting of creditors.   Such of these claims as were not barred by lapse of time might have been proved under the bankrupt act.   After that act took effect, all creditors who were within its jurisdiction, and who had not obtained fixed rights under the insolvent law, could proceed under that act only.   *Le Roy* v. *Crowninshield,* 2 Mason, 172. Story's Conflict of Laws, 278, 279.   2 Kent Com. (3d ed.) 389 & *seq.*   Esp. on Law of Bankrupts, 335.   3 Petersd. Ab. (Amer. ed.) 632.

Under *St.* 1838, *c.* 163, no proof of debts can be made after the fourth meeting of the creditors.   Four meetings only are provided for.

*W. Gray & Dehon,* for the appellees.   As all the claims of the appellees were prior to the passing of *St.* 1838, *c.* 163, they were subject to the operation of that statute, and not to the bankrupt act only.   The assignees (appellants) were trustees, under that statute, for all the creditors, before the bankrupt act was passed, and the passage of that act cannot affect the cred-itors' rights under that statute.   *Judd* v. *Ives,* 4 Met. 401. *Holmes's case,* 5 Law Reporter, 360.

The statute of limitations does not run against the note of the Insurance Company after the publication of notice that a warrant had issued, under the insolvent law, to take possession of the maker's property.   The property was thenceforth held in trust, and the statute does not run against a trust.   This point has been adjudged under the English bankrupt acts.   *Ex parte Ross,* 2 Glyn & Jameson, 46, 330.   In *Dewdney, ex parte,* cited for the appellants, it seems, from the statements in the different books, that the debt was barred by the statute of limi-tations, before any act of bankruptcy was committed, or before any proceedings were instituted under the bankrupt act.   See 2 Rose, 59, *note (a.)*   1 Christian on the Bankrupt Law, (2d ed.) 425.

Liens are not affected by the bankrupt act; and Rogerson's creditors had a lien, under the insolvent law.   They therefore

had a right to proceed under that law, notwithstanding the proceedings against him as a bankrupt. His discharge was a mere personal privilege. *Kittredge* v. *Warren*, 7 Law Reporter, 77.

By *St.* 1838, *c.* 163, §§ 2, 7, 13, creditors may prove their debts at any regular meeting, if there has not been a final distribution.

DEWEY, J.   The first objection to the allowance of the claims of the appellees is, that the same were barred by the statute of limitations. The position assumed by the assignees is, that though six years had not elapsed since the cause of action accrued, computing the time with reference to the publication of the proceedings in insolvency and the appointment of the messenger to take possession of the goods and effects of the insolvent ; yet as it had elapsed before the time of the meeting of the creditors, at which the demands were presented, it is a good statute bar to these demands. It seems necessary only to state the proposition, to show that it cannot be sustained. By force and effect of the appointment of a messenger, and the publication thereof conformably to the statute, the property of the insolvent debtor is sequestered for the benefit of all the then existing creditors. After such publication, a suit by a creditor would be of no avail, as the property is all transferred to an assignee, and the body of the debtor is to be discharged from arrest on execution. The debts presented for allowance against the insol vent are to be considered with reference to their validity at the date of the publication by the messenger. If they are found to be barred by the statute of limitations at that period, it would of course be competent for the assignees to object to their allowance, but not to compute the six years with reference to the time of the meeting of the creditors. A different rule would do manifest injustice. Take the case of a creditor, who has a debt which will be barred in thirty days. He knows that by law he has until the last of those thirty days to institute his suit, and intends to do so ; but in this state of things, the debtor, upon his voluntary application, goes into insolvency under *St.* 1838, *c.* 163 ; the incipient proceedings are all regularly taken ; but no meeting of the creditors is held for proving their debts, unti thirty days have elapsed. Is the debt of this creditor to be re

jected, as barred by the statute of limitations ? Clearly not But the principle contended for by the assignees would lead to that result, in the case supposed.

· The true rule is doubtless that already suggested, nan.ely, to compute the six years with reference to the time of publication of the notice of proceedings in insolvency. A similar principle is adopted in cases in bankruptcy. *Ex parte Ross*, 2 Glyn & Jameson, 46, 330. The motion there was to reject certain demands presented for allowance, by reason of the statute bar of six years' limitation. The Vice Chancellor said, that "after a commission issued, the statute of limitations does not run against a creditor; that the commission was a trust for the benefit of all the creditors, and it was a known principle that the statute did not run against a trust." On appeal to the Lord Chancellor, he asserted the same doctrine. The case of *Dewdney, ex parte*, 15 Ves. 479, was cited at the hearing before the Vice Chancellor, but was not considered as an authority for the contrary doctrine. That case, as I understand it, was one where the demand had been barred by the statute of limitations, before the institution of any proceedings.

The second objection taken, and one applicable to all the claims, is, that they ought to be rejected, because the debtor had, at a date prior to the presentation of these claims to the master in chancery for allowance, been declared a bankrupt under the bankrupt law of the United States, and had in fact received his certificate of discharge. The petition to be declared a bankrupt, the decree thereon, and the discharge, were all long subsequent to the institution of the proceedings in insolvency, under *St* 1838, *c.* 163, but prior to the time of filing the claims which are now the subject of controversy. The assignees contend, that the discharge under the bankrupt law operated, to all purposes, as a full discharge of the debtor from all his debts, and particularly from debts like the present; they having accrued prior to the *St* of 1838, *c.* 163.

It is true that the discharge in bankruptcy releases the debtor from all further personal liability for the payment of his debts But it leaves unimpaired all independent securities or other means

held by the creditor, from which the debt may be realized.  Prior to these proceedings in bankruptcy, the debtor, by his voluntary application as an insolvent, had caused all his property to be sequestered for the payment of his debts *pro ratâ;* and these creditors, by virtue of those proceedings, had acquired a right to claim their proportional dividend to be paid from the assets of the debtor in the hands of his assignees, on filing and proving their debts according to the provisions of the statute.  The distribution of the estate of the insolvent is to be made among all who are creditors at the time of the publication of the insolvency by the messenger.  The right to such distribution attaches, in reference to the state of the demand and the relation of debtor and creditor at that period.  The proceedings under the insolvent law having been instituted before the bankrupt act was enacted, they could not be superseded by the application, under the bankrupt law, for the insolvent's discharge as a bankrupt.  All the rights of the creditors as to the assets of the insolvent, which had accrued to them by virtue of the insolvent law, were continued to them notwithstanding the discharge of the debtor under the bankrupt act.

The third objection taken to the allowance of these demands by the master in chancery is, that it was not competent to present and prove claims, as creditors of an insolvent debtor, at a fifth meeting of the creditors.  The first, second and third meetings of the creditors are undoubtedly more specially designed for the purpose of affording an opportunity to prove debts against the insolvent; *St.* 1838, *c.* 163, §§ 2, 7, 12; but provision is made in this statute for a fourth, and subsequent meetings, whenever the state of the assets requires and authorizes it; and it is expressly provided by § 13, that " at any regular meeting of the creditors, those who have not before proved their debts shall be allowed to prove the same; " confining the distribution among such creditors to the funds remaining unappropriated in the hands of the assignees.

All the exceptions taken to the allowance by the master in chancery are overruled, and his report, allowing the demands of the appellees, is confirmed.