WISCONSIN TRUST COMPANY, Administrator, Respondent, vs. COUSINS, Commissioner of Banking, imp., Appellant.

*March 13—November 16, 1920.*

*Banks and banking: Liquidation of trust company by commissioner of banking: Enlargement of time to file claims: Rights of belated claimant as to prior dividends: Filing claim with commissioner as condition precedent to action: Negligence of trust company in making investments: Bills and notes: Renewal or discharge: Statute of limitations: Accrual of action: Executors: Failure to press claim against executor personally.*

1. The commencement of liquidation proceedings against a trust company by the commissioner of banking under sec. 2022, Stats., suspends, so far as the commissioner is concerned, the running of the statute of limitations (sub. (5), sec. 4222) as to any then existing obligation of the trust company, so that any subsequent interval between the commencement of the liquidation proceedings and the presentation of a claim for relief by any creditor should not be counted as any part of the statutory period of six years.

2. Notwithstanding sub. (5), sec. 4222, Stats., provides for no exceptions in any situation and it has been applied although apparent hardship has resulted, it has been held on the ground of public policy not to apply to transactions between husband and wife (*Flanagan's Estate v. Flanagan's Estate,* 169 Wis. 537); and in this case, where the state at its own instance, through a public official (the commissioner of banking), assumes complete jurisdiction in liquidation proceedings over the property of a debtor, it is *held* that the commissioner of banking is placed in such a trust relationship to the property of the insolvent and its creditors that the statute of limitations then running as against the debtor must be stayed.

3. It is necessary that the transaction, relied upon by a claimant against the assets of an insolvent trust company, shall be

first set forth by the claimant in a claim presented to and filed with the commissioner of banking before any other proceedings can be instituted by such claimant creditor as against such commissioner, the assets in his hands, or securities pledged with the state treasurer by the trust company.

4. On a proper showing of good excuse for claimant's failure to file a claim within the time originally fixed by the commissioner of banking, engaged in the liquidation of an insolvent trust company, the circuit court may permit the claimant to file his claim against the assets of the trust company after the expiration of said time.

5. Where the claimant is permitted by the court to file his claim after the expiration of the time originally fixed, he can share in the distribution of assets by means of dividends only to the extent of assets in the hands of the commissioner at the time of the filing of his claim and then applicable for distribution and cannot share in prior dividends.

6. Investments made in a particular loan by the trust company and continued by it as parts of either of two renewal loans of date ten years later, are in effect but parts of one continuous transaction. The statute of limitations therefore begins to run from the time of the original and improper investment.

7. A renewal of an obligation by the giving of a new note or the extension of time in which to pay a pre-existing debt is but a mere carrying on of the prior obligation, unless it appears that the parties agreed it should be a destruction of the old and the creation of a new obligation. The giving of additional security at the time of renewal or extension of time of payment of the pre-existing debt by the giving of a note of a third person, or otherwise, does not alter the creditor's right to continue to reap all the benefits of the pre-existing obligation and does not relieve the debtor from the original obligation.

8. Where investments in a particular loan made by a trust company as agent were improvident and improper, a cause of action arose for its negligence.

9. Where a client of the trust company died before the cause of action arising from an improvident loan was barred by the statute of limitations, and before the expiration of the year limited by sec. 4234, Stats., for his executor to sue on such cause of action the trust company itself became executor, it breached its duty in qualifying as executor and thereafter failing to take any proceedings to enforce or collect the claim for its own negligent investment before the same should be barred, and for such breach of duty a new and independent

cause of action arose against the trust company in favor of the client.

10. Interest is allowable on the amount of a liability of an executor for breach of duty in failing to prosecute a cause of action from the date when, by its failure to act within the statutory period, the right against it for its breach of duty became fixed.

11. Where a trust company, as executor of the estate of a deceased client for whom it had invested money, received a substantial amount on account of bonds in which it had invested the funds of the client, it breached its duty as executor in failing to see to it that the proportionate share of the payment on account of the bonds was turned into the assets of the estate.

12. Where the original claim filed with the commissioner of banking referred to the negligent investment by the trust company originally and not to new or independent causes of action arising because of breach of duty by the trust company as executor, there was no foundation for the allowance by the trial court of any claim based on the latter theory.

APPEAL from a portion of a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed and modified.*

In this as well as in the following cases the appeals present questions arising out of transactions involved in the liquidation proceedings of the Citizens Savings & Trust Company, commenced October 2, 1913. The respective actions were brought, after filing claims and the disallowance thereof, to have certain claims allowed, and when allowed to be permitted to share in the assets in the hands of the commissioner, and, as to certain of the claims, to be allowed to participate in certain securities placed by the Trust Company in the hands of the state treasurer. A large number of items were involved in these several actions other than those here presented. The disposition of such other items by the trial court is not questioned on these appeals.

Many of the facts in the following statement are applicable to the situations involved in the subsequent cases and will not be there repeated.

(For convenience the Citizens Savings & Trust Company, impleaded defendant, is hereafter referred to as the Trust Company; the commissioner of banking, whether the former commissioner, A. E. Kuolt, or the present commissioner, *Marshall Cousins,* as commissioner; and the Kaukauna Gas, Electric Light & Power Company as the Kaukauna Company.)

The general nature of the transactions involved in this and the other actions and the relationship of the various parties is shown in the following recitals:

For a long time prior to 1903 the law firm of Nathan Pereles & Sons conducted and carried on in the city of Milwaukee the business of lending and investing money for their clients. In 1903 James M. Pereles and Thomas J. Pereles were the sole members.

In July, 1897, the Citizens Loan & Trust Company was incorporated under the laws of the state of Wisconsin with a capital stock of $100,000 by said James M. and Thomas J. Pereles. In 1903 it took over the said loaning and investment business of said Nathan Pereles & Sons and its name was then changed to Citizens Trust Company and the capital stock increased to $300,000. It then deposited with the state treasurer of Wisconsin securities to the amount of $101,000, under the provisions of the then statutes relating to trust companies and trust company banks, and such securities thereafter remained in the hands of such state treasurer substantially as so deposited until after the liquidation proceedings were commenced.

In December, 1909, the necessary steps were taken by which such Citizens Trust Company accepted the provisions of ch. 186, Laws 1909, relating to trust company banks, and thereafter remained under the provisions of said law. December 1, 1911, the name was changed to Citizens Savings & Trust Company.

On October 2, 1913, said Trust Company was declared to be insolvent and was taken possession of by A. E.

Kuolt, then state banking commissioner, and remained in his possession as such until December, 1918, when he was succeeded as such commissioner by the defendant and appellant, *Marshall Cousins,* who since such time has continued such possession and control.

Shortly after October 2, 1913, due notice was given by the then commissioner to all persons who might have claims against said Trust Company so that due proof thereof might be made. The time fixed for filing and presenting such claims terminated February 26, 1914.

Pursuant to order of the circuit court for Milwaukee county a dividend of twenty-five per cent. on the claims then presented and allowed was made in April, 1914, and a further dividend of twenty per cent. in the same manner on or about September, 1918. Certain of the claims presented and filed with the commissioner were by him rejected and disallowed. Thereafter and in apparent compliance with sub. 5, sec. 2022, Stats., these actions were begun in the circuit court by certain of such claimants. The general facts as to certain particular transactions follow.

### Edward Zohrlaut Loan.

June 19, 1899, the Trust Company made a loan to one Edward Zohrlaut of Milwaukee, known on its records thereafter as loan No. 371, for $100,000, taking Zohrlaut's promissory note with a pledge of 1,930 shares of the stock of the Herman Zohrlaut Leather Company. At the same time Edward Zohrlaut gave to his father another note for $100,000 secured by other shares of stock in the same corporation. Edward Zohrlaut at such time had substantially no other property than such stock and it was wholly inadequate security for the loan by the Trust Company. This note was renewed from time to time by the giving of new notes until August 2, 1909, and the last of such renewal notes was surrendered and marked on the loan register of the Trust Company, "canceled by new notes No. 3706 and

3707, August 2, '09." A new record was then made in the loan register; one of loan 3706 by the Zohrlaut promissory note for $25,000 secured by a mortgage on his homestead; another as loan 3707 covering two notes, one of $25,000 and the other of $50,000, thus making by the three notes the $100,000 of the original transaction. These two notes thus aggregating $75,000 were secured by the pledge of the same 1,930 shares of the stock of the leather company which had been pledged in the first transaction. There was no material change in Edward Zohrlaut's financial condition between 1899 and August 2, 1909.

No payments were made on the principal of these three notes, but interest was paid on them until May 1, 1913. The Edward Zohrlaut Leather Company and Edward Zohrlaut were in March, 1914, adjudicated bankrupts and no substantial payments, if any, were made to their respective creditors.

### Kaukauna Gas, Electric Light & Power Company Transaction.

(Some features of this transaction were presented and disposed of in the case of *Connell v. Kaukauna,* 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035.)

April 10, 1906, the Kaukauna Gas, Electric Light & Power Company, a Wisconsin corporation (on whose board of directors was one of the Pereles, then and thereafter a principal officer and director of the Trust Company), obtained a loan from the Trust Company of $75,000 and issued a series of bonds secured by a trust deed upon its plant and property. The Trust Company was named and acted as trustee for the holders of such bonds and distributed them among its clients in similar manner to that above recited.

The value of the plant and property did not at that time exceed $50,000, as was known to such officers of the two companies, and it was not adequate security for the $75,000

issue of bonds which were thus parceled out by the Trust Company.

Subsequently the city of Kaukauna, in appropriate proceedings, obtained control and ownership of the public utility and property of the Kaukauna Company, and as consideration therefor paid to the Trust Company July 11, 1912, the sum of $45,294.40 on account of the then outstanding bonds of the Kaukauna Company. Instead of applying such amount in proportionate payments to its clients then holding such outstanding bonds or interest in the original investment of $75,000, the Trust Company converted such payment to its own use.

### Clark Realty Loan.

March 1, 1905, the Trust Company loaned $150,000 to the Clark Realty Company and took as security therefor a mortgage conveying about seventeen parcels of real estate, but the value of which did not exceed $120,000. The Trust Company in the exercise of ordinary care should have known at such time and continuously thereafter that such security was inadequate for the $150,000 loan, and the Trust Company was negligent in its investing of funds of its clients in such loan. Interest appears to have been paid up to May, 1913. The mortgage has been foreclosed and the Clark Realty Company has been adjudicated a bankrupt with no assets available for any deficiency judgment.

The loss to those whose moneys were invested in this particular loan will be about thirty-five per cent. of the principal.

The method pursued by the Trust Company with reference to these particular transactions and many of the others involved was to make the entries upon its loan register of the names of the respective clients whose moneys were invested in such prospective loans, and corresponding entries were made in pass-books issued to such clients and in which the accounts were continued as to such transactions and of

the interest paid thereon, such entries in the pass-books customarily being made semi-annually. In some of the loans a form of so-called participating certificate was given by the Trust Company.

*Particular items* involved in the appeal in this action:

First. In the Zohrlaut loan: The Trust Company invested during Williams' lifetime, on June 19, 1899, $4,000 in the original Edward Zohrlaut loan No. 371, and on May 1, 1905, $3,000 in the same, these two items being carried on the loan register and pass-book as part of the original loan No. 371. (These two items were disallowed by the trial court as being barred by the statute of limitations.) The trial court did, however, allow the total of these two items on the ground that there was an improper reinvestment of the total thereof by the transaction as to the Zohrlaut loan of August 2, 1909. After such date these two investments appeared on the list of clients whose funds were treated by the Trust Company as in loan No. 3707, being the one for the notes aggregating $75,000 and secured by the 1,930 shares of the leather company stock; neither of these items appearing as being any part of the loan No. 3706 of $25,000 secured by the homestead mortgage.

Second. In the Kaukauna Company loan: An investment by the Trust Company of $16,000 was made in the bonds of the Kaukauna Company April 10, 1906, and a further investment of $2,000 on November 10, 1907. This involves also the failure of the Trust Company to apply a proper proportionate share of the $45,294.49 received by it July 11, 1912, in part payment of such bonds to the bonds then belonging to the estate of Williams, of which the Trust Company had been executor since June 19, 1911.

Third. Clark Realty Company loan: In this the Trust Company invested on September 15, 1906, $1,200 in loan known as No. 2328, upon which the court found there had been a partial loss.

The claim of the plaintiff was filed with the commissioner

within the proper time and in January, 1914. The substance of the facts recited in such claim was as follows:

That Morgan P. Williams died April 7, 1911; the Citizens Trust Company was appointed June 14, 1911, as sole executor of his will and duly qualified; the filing of an inventory in October, 1912, by the Trust Company as such executor showing assets in its hands of the value of $52,375.56.

"That notwithstanding the law governing the investment of trust funds, said Citizens Savings & Trust Company as said executor invested the assets of said estate and permitted the same to remain invested in securities which did not comply with said law and large parts of which were and are valueless or of very little value, and which said Citizens Savings & Trust Company as such executor knew, or ought to have known at all times while acting as said executor, were valueless or of very little value; and that notwithstanding the premises said Citizens Savings & Trust Company as said executor made no effort to sell or convert said assets or any part thereof although it could readily have done so. That among such securities are those set forth in Schedule A, hereunto attached and made a part hereof, and that your claimant has marked opposite each of said items the value thereof according to its best judgment and information; that it has sought diligently to ascertain the value of said items and each of them, and that said statements in said schedule are true to the best of its knowledge and belief."

The Schedule A referred to above and attached to said claim, so far as relating to the items here, was as follows:

E. Zohrlaut Note P. C......$7,000.   Supposed worthless.
Clark Realty Co. P. C....... 2,200.   Supposed worthless.
Kaukauna Elec. Co. bonds..18,000.   Supposed worthless.
Clark Realty Co...........  500.   Supposed worthless.

The claimant prayed to have its claim allowed in the sum of $51,679.90. September 22, 1914, the claim was rejected and due notice given.

In March, 1915, this action was brought by service of

summons. An order was made extending the time for serving the complaint pending an examination of certain officers of the Trust Company who had been made parties under sec. 4096, Stats., but this examination was never completed.

January 25, 1919, a verified complaint was served. This complaint, so far as material here, prayed for an accounting to recover damages by reason of improvident investments made by the Trust Company during the lifetime of deceased and of moneys belonging to his estate while acting as executor and trustee under his will. It also pleaded as a separate cause of action a breach of duty by the Trust Company after becoming executor in failing to sell and dispose of improper securities theretofore held by the Trust Company. And for a third cause of action that the Trust Company received $45,294.49 in July, 1912, from the city of Kaukauna upon its purchase of the property covered by the trust deed of the Kaukauna Company, and that thereupon it became the duty of the Trust Company to apply, as a proper proportionate amount of such payment, the sum of $10,870.56 toward the payment of the bonds of the said Kaukauna Company in which Williams' money had been invested; that its failure to do so was a conversion of such sum to its own use.

Several defenses were interposed based upon certain statutes of limitation, and further, that as to certain of the items as so presented in the complaint they had not been first presented to the commissioner as a claim in the liquidation proceedings.

From so much of the judgment entered below as adjudged that the three several items above specified became proper charges against the assets either in the hands of the commissioner or the state treasurer the defendant commissioner of banking has appealed.

For the appellant there was a brief by *Flanders, Fawsett & Smart,* and oral argument by *Charles E. Monroe,* all of Milwaukee.

For the respondent there was a brief by *Lines, Spooner &
Quarles* of Milwaukee, and oral argument by *George Lines.*
The following opinion was filed July 17, 1920:

ESCHWEILER, J.    Several questions are presented on this
appeal which are also applicable in the following cases and
they will be first determined.    They require construction of
certain portions of the statute under which the liquidation
proceedings commenced by the commissioner of banking
against the insolvent Trust Company were instituted and
carried on, viz. sec. 2022, Stats.    Such sec. 2022 gives the
power, in the instances therein specified, to the banking
commissioner of this state to take possession of banks or
corporations doing a banking business such as the Trust
Company was in this instance, and provides for the manner
of winding up its affairs.    The subsections particularly con-
cerned in this opinion are as follows:

Section 2022.    *"Claims; notice.*    5. The commissioner
shall cause notice to be given by advertisement, in such
newspapers as he may direct, weekly for three consecutive
months, calling on all persons who may have claims against
such bank or banking corporation, to present the same to
the commissioner, and make legal proof thereof at a place
and within a time, not earlier than the last day of publica-
tion, to be therein specified.    The commissioner shall mail
a similar notice to all persons whose names appear as credi-
tors upon the books of the bank or banking corporation.    If
the commissioner doubts the justice and validity of any
claim, he may reject the same, and serve notice of such re-
jection upon the claimant either by mail or personally.    An
affidavit of the service of such notice, which shall be *prima
facie* evidence thereof, shall be filed with the commissioner.
An action upon a claim so rejected must be brought within
six months after such service.    Claims presented after the
expiration of the time fixed in the notice to creditors shall
be entitled to share in the distribution only to the extent of
the assets in the hands of the commissioner equitably ap-
plicable thereto."

*"Dividends.*    8. At any time after the expiration of the
date fixed for the presentation of claims, the commissioner

may out of the funds remaining in his hands after the payment of expenses declare one or more dividends, and after the expiration of one year from the first publication of notice to creditors, he may declare a final dividend, such dividends to be paid to such persons, and in such amounts, and upon such notice, as may be directed by the circuit court for the county in which such bank or banking corporation is located. Objections to any claim not rejected by the commissioner may be made by any party interested by filing a copy of such objections with the commissioner, who shall present the same to the circuit court at the time of·the next application to declare a dividend. The court may make proper provision for unproved or unclaimed deposits."

The questions presented are as follows:

1. Did the commencement of these liquidation proceedings on October 2, 1913, under said sec. 2022, Stats., suspend, at least so far as the commissioner of banking was concerned, the running of the six-years statute of limitations (sub. (5), sec. 4222, Stats.) as to any then existing obligation of the insolvent Trust Company so that any subsequent interval between such commencement of the liquidation proceedings and the presenting of a claim for relief by any creditor should not be counted as being any part of the statutory period of six years?

2. Is it necessary that the transaction relied upon by a claimant as the basis for his right to participate in the assets of such insolvent Trust Company shall be·first set forth by him in a claim presented to and filed with the commissioner of banking before any other proceedings can be instituted by such creditor as against such commissioner or the assets in his hands or the securities pledged with the state treasurer by such Trust Company?

3. May a claim be presented and allowed after the time originally fixed in the notice to creditors as given by the commissioner? and

4. In case such belated claim is presented and allowed, may it properly participate in prior dividends?

On the first of the above questions we hold that the commissioner of banking acts under this statute as trustee for all the creditors. That after taking possession and control of all the assets of the insolvent Trust Company by virtue of the statutory power granted him, he ought not to be heard to assert that the time intermediate his so taking possession and the proper filing of a claim in such proceeding shall be considered as any part of the six-year statute of limitations then running against such claim. In other words, that, so far as the commissioner of banking is concerned, he having by authority of law taken possession of all the property of the debtor and thereby practically deprived the creditor of any right to pursue the debtor or its property by other proceedings, it must be held that the law thereby stayed, as to him at least, the then running of the statute of limitations.

Sub. (5), sec. 4222, Stats., would bar a right of action to recover upon any of the causes of action based upon the negligent investment of funds by the Trust Company within six years after such investment. This statute makes no express exception as to its application in any situation and at least such as is presented here. The application of this statute in its literal form often works apparent hardship, and even where a positive fraud is worked and the victim thereof remains in ignorance of its perpetration until after the six years have expired the statute has nevertheless barred his right. *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762; *Casper v. Kalt-Zimmers M. Co.* 159 Wis. 517, 149 N. W. 754, 150 N. W. 1101; *Stahl v. Broeckert,* 170 Wis. 627, 176 N. W. 66.

Notwithstanding the imperative form of this statute, it has been held on the ground of public policy that it does not apply to transactions between husband and wife, although in so holding there is in effect an exception read into the statute by judicial construction based upon recognition of the overriding weight of the public policy involved in the

marriage relationship.    *Flanagan's Estate v. Flanagan's Estate,* 169 Wis. 537, 542, 173 N. W. 297.

We think there is in the situation here presented another instance where the public policy shown in providing such a far-reaching and exclusive remedy as is involved in this liquidation proceeding—by which the state itself, through one of its officials, steps in and at its own instance rather than that of private persons or individual creditors assumes such complete jurisdiction over the business and property of a debtor—must be held to place the public official in such a trust relationship to the property of the insolvent and its creditors that the statute of limitations then running as against the debtor must be stayed.    The creditor who can no longer resort to the debtor or his property by independent action must be deemed now to stand in such a new relationship towards such property held by the commissioner of banking as to stay the running of the old and begin the running of a new statute.

A similar conclusion has been arrived at in other jurisdictions with reference to such statutory proceedings as are involved in voluntary assignments or insolvency laws. *Minot v. Thacher,* 48 Mass. 348; *Ludington v. Thompson,* 153 N. Y. 499, 47 N. E. 903; *Kirkpatrick v. McElroy,* 41 N. J. Eq. 539, 555, 7 Atl. 647; *Hignutt v. Garey,* 62 Md. 190, 192; *In re St. Paul German Ins. Co.* 58 Minn. 163, 59 N. W. 996, 26 L. R. A. 737; 2 Wood, Limitations, p. 960.

The second of the above questions requires an affirmative answer.

The wide sweep of power and authority given to the state official in these liquidation proceedings under sec. 2022, Stats., if not absolutely exclusive of all other remedies to the creditors, at least renders all other remedies of no practical value.    The statute gives the commissioner wide power and discretion in passing upon the justice and validity of the demands made by respective claimants upon such

assets in his hands. The evident intent and purpose of the statute is to provide a direct, simple, expeditious, and economical manner of disposing of the claims against the assets belonging to such insolvent. It is evident that the statute intends that there shall be first presented to the commissioner, for his determination as to its justice and validity, a statement of and a reference to the transaction upon which the claimant predicates his right to participate in the assets. Until he has done so and the commissioner has passed upon and then rejected such claim, the creditor has no right to bring an independent action against the commissioner for the purpose of subjecting the assets in his hands or those pledged with the state treasurer to possible payment of the claim. To hold otherwise would be to open the door to manifest multiplicity of suits, delay, and additional expense.

The third question must be answered Yes.

The legislature in this statute made no express provision to the effect that the failure to file such a claim with the commissioner before the expiration of the time fixed by him under such statute for the giving and filing of such notice shall be an absolute bar to the right to subsequently make and file such claim, yet the last clause of sub. 5, sec. 2022, as quoted above, very plainly recognizes that the legislature understood that there was still left open a possibility for a belated claimant to present his claim after the time so fixed, but no terms or conditions are specified anywhere in the statute upon which such relief can be had.

By other subsections of said sec. 2022, and particularly sub. 11, 12, and 14, it is evident that it was intended, in spite of the broad and *quasi*-judicial powers given to the commissioner, that nevertheless he should be, as are all trustees, subject to the general supervision and control of the circuit court. Such supervisory power of the circuit court being expressly recognized in this statute in many matters, we arrive at the conclusion that, upon a proper

showing of good excuse for his failure being made, the circuit court may grant permission to file a claim after the expiration of the time originally fixed to him who has failed to file his claim within the time specified; the situation so evidently recognized by the last sentence of. sub. 5, sec. 2022, Stats., *supra,* as to subsequent claims being thereby met.

As to the fourth of the above stated questions, the answer must also be reached without help from other sources than by a construction of the statutory language. From such consideration we hold that it is the intent of the last clause of said sub. 5, *supra,* that the belated claimant shall share in the distribution only to the extent of the assets in the hands of the commissioner at that time equitably applicable for such then distribution. That is, that the language "equitably applicable thereto" must speak only as of the time at which such claim is presented to the commissioner. Such belated claimant is not equitably entitled to share with the diligent creditor in dividends that have theretofore been paid to such diligent creditor. To the extent of such prior payment the assets used in such payment are no longer present to be subject to any equitable right of such belated claimant to participate in their distribution.

A question of importance not only in this case but in several of those following is presented in the consideration of whether or not the trial court was correct in holding as he did that the original Zohrlaut loan No. 371, made by the Trust Company in June, 1899, for $100,000, and then secured by a pledge of 1,930 shares of stock in the Herman Zohrlaut Leather Company, was so satisfied and discharged that there was neither in substance or effect a renewal thereof, but instead a new loan and a separate and independent transaction by the acceptance on August 2, 1909, of the three notes; one, loan No. 3706 for $25,000 secured by a mortgage on the Zohrlaut homestead; and loan No. 3707 of two notes aggregating $75,000 and secured by the pledge of the same 1,930 shares in the leather company.

The trial court held in effect that the statute of limitations commenced anew from such transactions of August, 1909. We think the trial court was in error in arriving at such conclusion, and we now hold that as to investments made in the original Edward Zohrlaut loan of June, 1899, and continued by the Trust Company as parts of either of the two so-called loans of August 2, 1909, they were in fact but parts of one continuous transaction, and that any improper investment by the Trust Company as agent for its clients was committed at the time of such original respective investments only, and that the statute of limitations for the beginning of an action to recover for the liability thus incurred by the Trust Company dates from the period of the original investments and not from the transaction of August 2, 1909, or anything subsequently done.

In June, 1899, Edward Zohrlaut borrowed from the Trust Company $100,000. His obligation to repay the same arose then and there. He then gave evidence of that obligation by his promissory note of $100,000 and secured the same by the pledging of 1,930 shares of the capital stock of the leather company. Successive renewals of such note were made at several times prior to August, 1909, and the pledged stock remained with the Trust Company during all that period as collateral security. Under the well and long settled doctrine of law in this state, each of such renewal notes prior to August, 1909, was, under the evidence in this case, but an extension or continuation of the original obligation rather than successive payments.

There is no evidence in the record to the effect that when the three notes were executed by Edward Zohrlaut on August 2, 1909, and the then existing written evidence of the original obligation, to wit, the then outstanding note of $100,000, surrendered, there was then any express agreement between the Trust Company and Zohrlaut that the original obligation should be canceled, discharged, or considered paid.

We find nothing in the record to warrant a reasonable inference that there was such an express agreement between the debtor and creditor at such time.

It is the long and well settled doctrine in this state that a renewal by the giving of a new note or the extension· of time in which to pay a pre-existing debt is not a discharge· of the old and original obligation and the creation of a new obligation, but a mere carrying on of the prior obligation, unless and except it appears that the parties agreed that it should be a destruction of the old and the creation of a new obligation. The following among other authorities so declare: *Williams v. Starr,* 5 Wis. 534, 548; *Paine v. Voorhees,* 26 Wis. 522, 526; *Aultman & Co. v. Jett,* 42 Wis. 488, 491; *First Nat. Bank v. Case,* 63 Wis. 504, 510, 22 N. W. 833; *First Nat. Bank v. Finck,* 100 Wis. 446, 452, 76 N. W. 608; *Crocker v. Huntzicker,* 113 Wis. 181, 190, 88 N. W. 232; *Lowry v. Milwaukee Nat. Bank,* 114 Wis. 311, 317, 90 N. W. 178; *Paulson v. Boyd,* 137 Wis. 241, 249, 118 N. W. 841.

The giving of additional security at the time of renewal or extension of time of payment of the pre-existing· debt, either by the giving of a note of a third person· or in some other form, does not alter the right of the creditor to continue to reap all the benefits to him that may surround the pre-existing obligation and does not relieve the debtor from his original obligation. *Willow River L. Co. v. Luger F. Co.* 102 Wis. 636, 638, 78 N. W. 762; *Bright v. Carter,* 117 Wis. 631, 635, 94 N. W. 645.

The substantial element of the obligation on the part of the debtor Zohrlaut to the creditor Trust Company to repay the $100,000 borrowed June, 1899, was as much present after August 2, 1909, as before. From that time on the written evidence of such obligation was in the shape of three promissory notes aggregating $100,000, rather than as formerly in the shape of one note. His substantial obligation was in no way changed by the giving of the additional

security in the shape of the mortgage on his homestead; it only added to the security to which the Trust Company might resort in case of his default on his primary obligation.

It is immaterial that the Trust Company changed on its books and in the pass-books of its clients the form of its entries as to the situation of such clients towards the loan in question by specifying that as to certain of such clients the collateral security, so far as they were concerned, was to be that of the mortgage alone and as to the others the pledged shares of stock alone. This was a transaction between the Trust Company and its clients and is no part of the transaction between Zohrlaut the debtor and the Trust Company the creditor, and it is the transaction between these two alone that determines such issue.

Having determined that investments by the Trust Company in the Zohrlaut loan could not be considered as giving a right to a new cause of action arising on or subsequent to August 2, 1909, it is still necessary to determine whether any right of action still remains as to the original investment of either of the two items making up the $7,000 involved in that transaction.

The first investment was $4,000, June 19, 1899. That and the subsequent investment in that particular loan were improvident and improper investments by the Trust Company as agent for Williams, and for its negligence in making such investment a cause of action then arose. *Woodard v. Citizens S. & T. Co.* 167 Wis. 435, 437, 167 N. W. 1054. As to the investment of $4,000 in June, 1899, the statute of limitations came into effect as to any right of action for such particular investment on June 19, 1905, and during the lifetime of Williams. Any right to assert a claim on account of such $4,000 by reason of that investment in 1899 is concededly lost and barred, and it was so found by the trial court.

On May 1, 1905, occurred a similar negligent investment of $3,000 in the same Zohrlaut loan. The statute of limitations as to that expired May 1, 1911. Mr. Williams died

April 7, 1911, prior, therefore, to the taking effect of the six-year statute of limitations as to the $3,000 item.

The first sentence of sec. 4234, Stats., viz., "If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof and the cause of action survive an action may be commenced by his represen-·tatives after the expiration of that time and within one year from his death," then became applicable to this situation and continued the right existing at the time of Mr. Williams' death to bring such action to his representatives up to and until April 7, 1912. In the meantime and on June 11, 1911, the very Trust Company against which such cause of action existed at the time of Mr. Williams' death became sole executor of the last will of Williams.

At the time the Trust Company undertook to qualify as such sole executor a situation was presented under which the Trust Company was bound in equity to at least do one of the following things: (1) refuse to accept the office of executor and permit the appointment of some one who could in good faith insist upon the enforcement within the proper time of the claim against the Trust Company for its breach of duty as to the investment of the $3,000; or (2) charge itself as such executor with the amounts that should properly be considered as the equivalent of such outstanding claims against the Trust Company on behalf of Williams at the time of his death.

The defendant Trust Company did neither, and remained as sole executor of the Williams estate until after the liquida-·tion proceedings were commenced October 2, 1913.

It is manifest that when the Trust Company did qualify as executor of the estate of Williams and thereafter failed to take any proceedings prior to April 7, 1912, within which time such action might have been brought to enforce or collect such claim, it breached a positive duty it owed under the trust relationship of executor to such estate. For such breach of duty a new and independent cause of action arose

in favor of the estate of Williams, and such new cause of action, starting no earlier at least than June 11, 1911, the time of its appointment, was concededly not barred by any statute of limitations at the time of the filing of the claim for such transaction by the present administrator of such estate.

The estate of Morgan P. Williams, therefore, was entitled to have allowed as a proper claim against the assets of the Trust Company the sum of $3,000, being the amount of the investment in the Zohrlaut loan in 1905 which the Trust Company as executor of the estate had failed to recover for said estate. Interest should be allowed on such sum from April 7, 1912, being the date when, by its failure to act within the statutory period, the right against it for its breach of trust became settled and fixed.

### Kaukauna Company Loan.

The Trust Company as agent for Williams invested $16,000 and $2,000 in bonds of the Kaukauna Company April 10, 1906, and November 10, 1907, respectively. These were improvident investments in view of the nature of the securities known to the officers of the Trust Company and for which it could have been held liable. The statute of limitations had not expired as to either of such causes of action for such respective investments at the time of Williams' death, April 7, 1911. Subsequently, on June 11, 1911, the Trust Company was appointed and qualified as sole executor of the will of said Williams. Thereafter and in July, 1912, there was paid by the city of Kaukauna a certain substantial amount on account of these bonds. So that, so far as the original investment was concerned, the Trust Company had realized a substantial amount thereon. Immediately thereafter the Trust Company, in its capacity as executor of said will, breached its duty by failing to see to it that the proportionate share of the payment by the city of Kaukauna on account of such funds was covered into the assets of the Williams estate. Thereupon a cause of

action arose in favor of the estate, as was found by the trial court, and if a claim therefor had properly been filed with the commissioner of banking pursuant to the statute it should have been allowed.

A statement that the plaintiff relies upon this breach of duty occurring in July or August, 1912, upon the payment by the city of Kaukauna on account of the bonds, first specifically appears in the complaint served and presented in January, 1919.

It is urged that, giving the claim as filed by plaintiff in the liquidation proceedings in January, 1914, the fair and reasonable interpretation to which such document is entitled under the liberal rules of construction, the commissioner was reasonably apprised by the filing of such claim that reliance was placed by plaintiff on this cause of action first arising in July or August, 1912, so that upon rejection of the claim the plaintiff was entitled to have such a part of his cause of action so brought under the statute.

We are constrained to hold, however, from an inspection of the claim, the material parts of which are set forth in the statement of facts, that all the references there as to the Kaukauna Company transaction were relative to the original investments and not to the new and independent cause of action which arose by the breach of duty of the Trust Company as executor of the estate of Williams in July and August, 1912. No claim, therefore, having been first filed with the commissioner for his determination, it could not be incorporated below as a new and independent cause of action in the complaint following the commencement of this action by the service of summons in March, 1915. For want, therefore, of a proper foundation in the filing of a claim therefor with the commissioner of banking, there is no support for the allowance by the trial court of any claim based upon the failure of the Trust Company in July and August, 1912, to apply the proportionate share of the payment by the city of Kaukauna to the estate of Williams.

*Clark Realty Company Transaction.*

The judgment included the sum of $430, with interest from May 1, 1913, for a partial loss resulting in the improvident investment on September 15, 1906, of $1,200 of Williams' money in the Clark Realty Company loan, the details of which are set forth in the above statement of facts.

A cause of action for this improvident investment was an existing one at the time of the appointment and qualification as executor of the Williams estate by the Trust Company in June, 1911. Between that period and the liquidation proceedings of October 2, 1913, no steps were taken by the Trust Company to secure to the estate of Williams anything whatsoever on account of this particular transaction. There was, therefore, at the time of the liquidation proceedings a cause of action existing in favor of the estate of Williams against the Trust Company, and, as we have seen, such liquidation proceedings stopped the running of the statute of limitations thereafter so far as the commissioner of banking could assert the same.

In the claim filed by plaintiff in January, 1914, there is express reference made to this particular investment, although a mistake appears as to the dates of the respective investments in the Clark Realty Company loan. We are satisfied that sufficient appeared in the claim of January, 1914, with reference to this particular transaction of the Trust Company as agent for Williams and of its default as executor so that it might be properly asserted and presented for adjudication in this action. Such portion of the judgment, therefore, as allows this item and interest thereon is affirmed.

*By the Court.*—Judgment reversed, and the action remanded for modification of the judgment in accordance with this opinion.

SIEBECKER, C. J., and ROSENBERRY, J., dissent.

A motion for a rehearing was denied, with $25 costs, on November 16, 1920.