IN RE LIQUIDATION OF BANK OF VIROQUA : FIRST NATIONAL BANK OF VIROQUA, Respondent, vs. BANK OF VIROQUA (BANKING COMMISSION), Appellant.

*October 12—November 7, 1939.*

For the appellant there were briefs by *J. Henry Bennett* of Viroqua, attorney, and *G. M. Buenzli* of Madison of counsel, and oral argument by *Mr. Bennett*.

*Wayne B. Schlintz* of Viroqua, for the respondent.

MARTIN, J. As indicated in the foregoing statement of facts, these are liquidation proceedings of an insolvent state bank under ch. 220, Stats. 1933, more particularly under sec. 220.08 and the various subsections thereof. Sec. 220.08 (5), Stats. 1933, which is applicable here, provides:

"The commissioner shall cause notice to be given by advertisement, in such newspapers as he may direct, weekly for three consecutive months, calling on all persons who may have claims against such bank or banking corporation, to present the same to the commissioner, and make legal proof thereof at a place and within a time, not earlier than the last day of publication, to be therein specified. The commissioner shall mail a similar notice to all persons whose names appear as creditors upon the books of the bank or banking corporation. Any creditor of such bank or banking corporation holding security of any nature, shall file a claim as a general creditor only for the amount by which the debt exceeds the value of such security. The value of said security and the amount to be allowed on the claim so filed shall, upon

application of such creditor or the commissioner of banking and upon at least twenty days' notice to the opposing party, be determined by the circuit court of the county wherein such bank or banking corporation is located. If the commissioner doubts the justice and validity of any claim, he may reject the same, and serve notice of such rejection upon the claimant either by mail or personally. An affidavit of the service of such notice, which shall be *prima facie* evidence thereof, shall be filed with the commissioner. An action upon a claim so rejected must be brought within six months after such service. Claims presented after the expiration of the time fixed in the notice to creditors shall be entitled to share in the distribution only to the extent of the assets in the hands of the commissioner equitably applicable thereto."

Sub. (8) of sec. 220.08, Stats. 1933, provides:

"At any time after the expiration of the date fixed for the presentation of claims, the commissioner may out of the funds remaining in his hands after the payment of expenses declare one or more dividends, and after the expiration of one year from the first publication of notice to creditors, he may declare a final dividend, such dividends to be paid to such persons, and in such amounts, and upon such notice, as may be directed by the circuit court for the county in which such bank or banking corporation is located. Objections to any claim not rejected by the commissioner may be made by any party interested by filing a copy of such objections with the commissioner, who shall present the same to the circuit court at the time of the next application to declare a dividend. The court may make proper provision for unproved or unclaimed deposits."

Sub. (10) of sec. 220.08, Stats. 1933, provides:

"Whenever the commissioner shall have paid to each and every depositor and creditor of such bank or banking corporation (not including stockholders), whose claim or claims as such creditor or depositor shall have been duly proved and allowed, the full amount of such claims, and shall have made proper provision for unclaimed and unpaid deposits or dividends, and shall have paid all the expenses of the liquidation, the commissioner shall call a meeting of the stockholders of such bank or banking corporation by giving notice thereof

for thirty days in one or more newspapers published in the county where such bank or banking corporation is located. At such meeting the stockholders shall determine whether the commissioner shall be continued as liquidator and shall wind up the affairs of such bank or banking corporation, or whether an agent or agents shall be elected for that purpose, and in so determining the said stockholders shall vote by ballot, in person or by proxy, each share of stock entitling the holder to one vote, and the majority of the stock shall be necessary to a determination."

Sub. (13) of sec. 220.08, Stats. 1933, provides:

"Dividends and unclaimed deposits remaining unpaid in the hands of the commissioner for six months after the order for final distribution shall be by him deposited in one or more state banks, to the credit of the commissioner of banking, in his name of office, in trust for the several depositors with and creditors of the liquidated bank or banking corporations from which they were received entitled thereto. . . ."

Sub. (14) of sec. 220.08, Stats. 1933, provides:

"The commissioner may pay over the moneys so held by him to the persons respectively entitled thereto, upon being furnished satisfactory evidence of their right to the same. In cases of doubt or conflicting claims, he may require an order of the circuit court authorizing and directing the payment thereof. . . ."

The statutes of 1933, relating to the liquidation of insolvent state banks and trust companies, are, so far as here material, substantially the same as the statutes of 1919 which were in force and effect when this court decided the case of *Wisconsin Trust Co. v. Cousins,* 172 Wis. 486, 497, 179 N. W. 801, and similar cases at that time. In *Wisconsin Trust Co. v. Cousins, supra,* the court stated the several questions involved before proceeding to its decision. The second question there stated reads as follows:

"Is it necessary that the transaction relied upon by a claimant as the basis for his right to participate in the assets of such insolvent trust company shall be first set forth by him in

a claim presented to and filed with the commissioner of banking before any other proceedings can be instituted by such creditor as against such commissioner or the assets in his hands or the securities pledged with the state treasurer by such trust company?"

At page 499 the court said:

"The second of the above questions requires an affirmative answer.

"The wide sweep of power and authority given to the state official in these liquidation proceedings under sec. 2022 [Stats. 1919, being sec. 220.08, Stats. 1933], if not absolutely exclusive of all other remedies to the creditors, at least renders all other remedies of no practical value. The statute gives the commissioner wide power and discretion in passing upon the justice and validity of the demands made by respective claimants upon such assets in his hands. The evident intent and purpose of the statute is to provide a direct, simple, expeditious, and economical manner of disposing of the claims against the assets belonging to such insolvent. It is evident that the statute intends that there shall be first presented to the commissioner, for his determination as to its justice and validity, a statement of and a reference to the transaction upon which the claimant predicates his right to participate in the assets. Until he has done so and the commissioner has passed upon and then rejected such claim, the creditor has no right to bring an independent action against the commissioner for the purpose of subjecting the assets in his hands or those pledged with the state treasurer to possible payment of the claim. To hold otherwise would be to open the door to manifest multiplicity of suits, delay, and additional expense."

What is here said is applicable in the instant case for the reason that the petitioner herein has wholly failed and neglected to file any claim with the Banking Commission or its agent in charge of the liquidation of the Bank of Viroqua. The claims of all creditors must first be presented to the Banking Commission. If a claim is rejected by the commission, sub. (5) of sec. 220.08, Stats. 1933, provides:

"An action upon a claim so rejected must be brought within six months after such service."

This subsection further provides:

"Claims presented after the expiration of the time fixed in the notice to creditors shall be entitled to share in the distribution only to the extent of the assets in the hands of the commissioner equitably applicable thereto."

Obviously, that part of the statute last above quoted contemplates that under some circumstances a claim may be filed after the time fixed for filing has expired. In the *Cousins Case, supra,* the court said, at page 500, the following:

"By other subsections of said sec. 2022 [Stats. 1919 (same as sec. 220.08 and subsections thereof, Stats. 1933)], and particularly subs. 11, 12, and 14, it is evident that it was intended, in spite of the broad and *quasi-*judicial powers given to the commissioner, that nevertheless he should be, as are all trustees, subject to the general supervision and control of the circuit court. Such supervisory power of the circuit court being expressly recognized in this statute in many matters, we arrive at the conclusion that, upon a proper showing of good excuse for his failure being made, the circuit court may grant permission to file a claim after the expiration of the time originally fixed to him who has failed to file his claim within the time specified."

We are of the view that the supervisory power of the court here mentioned may not be invoked in the first instance by the claimant until the commission has either refused to receive the claim as coming too late, or, having received it, rejected it for other reasons, in which event the court under its supervisory power may grant a claimant permission to file his claim. In the instant case the petitioning bank by not filing its claim with the commission has thereby deprived the commission of its power to act favorably or otherwise on its claim. It appears that the Bank of Viroqua went on a so-called "stabilization plan" on April 16, 1932. On December 9, 1933, it was taken over by the Banking Commission. It further appears that while operating under the stabilization plan, certain deferred certificates and a participating trust certificate were issued, and it is claimed that certain dividends

have been set aside to apply on the deferred certificates and the participating certificate. However, it does not appear that any dividend on either the deferred certificates of deposit or on the participating trust certificate was in fact paid to the holder of the original $400 certificate of deposit issued to the sheriff of Vernon county on September 29, 1931. Of course, when the bank closed and was taken over by the Banking Commission, the so-called stabilization plan terminated. From the time the Banking Commission took possession, its creditors had to file their claims with the commission as of that date. The only dividends that the court may deal with in these proceedings are those which have been declared in the liquidation proceedings and such future dividends as may be declared. If certain dividends were declared on deferred certificates of deposit or on participating trust certificates during the stabilization period before the Banking Commission took charge and were not in fact paid on the original $400 certificate of deposit, the court in this proceeding is without the power to direct payment of such dividends to the petitioner herein. Also, the court was without power to direct that petitioner's claim, if and when it is filed with the Banking Commission, shall participate in past dividends. "Claims presented after the expiration of the time fixed in the notice to creditors shall be entitled to share in the distribution *only* to the extent of the assets in the hands of the commissioner equitably applicable thereto." Sub. (5) of sec. 220.08, Stats. 1933; *Wisconsin Trust Co. v. Cousins, supra,* page 501. From what has been said, it follows that the order appealed from in its entirety must be reversed and the proceedings dismissed.

Appellant contends that any claim which the petitioner might have had is now barred by the six-year statute of limitations. (Sec. 330.19, Stats. 1933.) The $400 certificate of deposit issued to Stener Jacobson, sheriff of Vernon county, on September 29, 1931, and payable to (order

of self) was payable one year after date on return of said certificate; hence it became due and payable on September 29, 1932. The Banking Commission took charge of the Bank of Viroqua for the purpose of liquidating same on December 9, 1933. Therefore, said certificate had run past its due date one year two months and ten days at the time the bank was taken over by the Banking Commission. The respondent contends that the running of the statute of limitations was tolled as of December 9, 1933, the date the Banking Commission took charge. In *Wisconsin Trust Co. v. Cousins, supra,* page 497, the court said:

"Did the commencement of these liquidation proceedings on October 2, 1913, under said sec. 2022, Stats., suspend, at least so far as the commissioner of banking was concerned, the running of the six-year statute of limitations (sub. (5), sec. 4222, Stats.) as to any then existing obligation of the insolvent trust company so that any subsequent interval between such commencement of the liquidation proceedings and the presenting of a claim for relief by any creditor should not be counted as being any part of the statutory period of six years?"

In answering this question, the court said (p. 498):

"On the first [question above quoted] of the above questions we hold that the commissioner of banking acts under this statute as trustee for all the creditors. That after taking possession and control of all the assets of the insolvent trust company by virtue of the statutory power granted him, he ought not to be heard to assert that the time *intermediate* his so taking possession and the proper filing of a claim in such proceeding shall be considered as any part of the six-year statute of limitations then running against such claim. In other words, that, so far as the commissioner of banking is concerned, he having by authority of law taken possession of all the property of the debtor and thereby practically deprived the creditor of any right to pursue the debtor or its property by other proceedings, it must be held that the law thereby stayed, as to him at least, the then running of the statute of limitations.

"Sub. (5), sec. 4222, Stats., would bar a right of action to recover upon any of the causes of action based upon the negligent investment of funds by the trust company within six years after such investment. This statute makes no express exception as to its application in any situation and at least such as is presented here. The application of this statute in its literal form often works apparent hardship, and even where a positive fraud is worked and the victim thereof remains in ignorance of its perpetration until after the six years have expired the statute has nevertheless barred his right. [Citing cases.]

"Notwithstanding the imperative form of this statute, it has been held on the ground of public policy that it does not apply to transactions between husband and wife, although in so holding there is in effect an exception read into the statute by judicial construction based upon recognition of the overriding weight of the public policy involved in the marriage relationship. [Citing cases.]

"We think there is in the situation here presented another instance where the public policy shown in providing such a far-reaching and exclusive remedy as is involved in this liquidation proceeding—by which the state itself, through one of its officials, steps in and at its own instance rather than that of private persons or individual creditors assumes such complete jurisdiction over the business and property of a debtor—must be held to place the public official in such a trust relationship to the property of the insolvent and its creditors that the statute of limitations then running as against the debtor must be stayed. The creditor who can no longer resort to the debtor or his property by independent action must be deemed now to stand in such a new relationship toward such property held by the commissioner of banking as to stay the running of the old and begin the running of a new statute."

If the six-year statute of limitations is applicable under the statutes relative to the filing of claims in liquidation proceedings of an insolvent bank, and if we compute the time from the date of maturity of the $400 certificate of deposit to the date the Banking Commission took charge, one year two months and ten days, and then add to this period the time

from the giving of the notice to creditors to file their claims to the commencement of these proceedings, January 27, 1939, petitioner's claim would be barred. However, having in mind the general rule that a statute of limitations destroys the cause of action completely, we must hold that the statute of limitations is not applicable to the liquidation of an insolvent bank under our statutes because sub. (5) of sec. 220.08, Stats. 1933, specifically provides that claims may be presented after the expiration of the time fixed for the filing of claims, the only limitation being that claims filed after the expiration of the time fixed shall share in the distribution of the assets of the insolvent bank only to the extent of the assets then in the hands of the commissioner equitably applicable thereto, and for the further reason that under its supervisory power the court upon "good excuse" shown may grant a claimant the right to file his claim in the liquidation proceedings at any time after the expiration of the time fixed for filing claims and before the final termination of the liquidation proceedings. It should also be noted that, under subs. (13) and (14) of sec. 220.08, Stats. 1933, above quoted, dividends and unclaimed deposits remaining unpaid in the hands of the commissioner for six months after the order for final distribution shall be deposited by him in one or more state banks, to the credit of the commissioner in his name of office in trust for the several depositors, and that the moneys so held by the commissioner be paid to the persons entitled thereto upon being furnished satisfactory evidence of their right to the same, also, that in cases of doubt or conflicting claims, the commissioner may require an order of the circuit court authorizing and directing payment of such moneys so in his hands to the persons entitled thereto. It is conceivable that the liquidation of an insolvent bank may continue for ten years or more. Still, at any time during the liquidation proceedings, the court may, for "good excuse" shown, enter an order permitting a

claimant to file his claim. It is true that if a creditor files his claim, and the same is rejected, he must bring his action within six months after notice of such rejection, but this statutory provision only applies to claims filed and rejected.

In accord with what is said in *Wisconsin Trust Co. v. Cousins, supra,* we hold that the running of the statute of limitations was stayed on December 9, 1933, the date on which the Banking Commission took charge, since which date the six-year-statute of limitations has not been applicable.

*By the Court.*—Order reversed. Record remanded with directions to enter an order dismissing the proceedings.